Paul S. WOOLLEY, Appellant,

v.

EASTERN AIR LINES, Inc., et al., Appellees.

No. 16585.

United States Court of Appeals
Fifth Circuit.

Dec. 5, 1957.

W. G. Ward, Miami, Fla., Ward & Ward, Miami, Fla., for appellant.

W. Glen Harlan, Atlanta, Ga., Charles M. Moon, Carl T. Hoffman, Miami, Fla., Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., Wyatt Johnson, and Hoffman, Kemper & Johnson, Miami, Fla. (E. Smythe Gambrell, John W. Chambers, Atlanta, Ga., of counsel), for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal presents the question whether the District Court has the power to entertain a suit for reinstatement with back salary of an air line pilot who has previously voluntarily submitted his case to the System Board of Adjustment, created under the authority of the Railway Labor Act, 45 U.S.C.A. § 184, and has been denied relief.

Appellant Woolley had been laid off in 1950 by Eastern Air Lines for alleged unsafe flying practices. After considerable negotiations conducted on his behalf by the Air Line Pilots Association, his bargaining representative, the company agreed to take him back after six months suspension on condition that he sign a letter of resignation which could be accepted by Eastern's Vice President of Operations "at any time in the future, should you personally feel that I am not handling my job in the proper manner." [1]

On February 20, 1956, Eastern wrote a letter to Woolley purporting to accept the resignation by using the words contained in his letter of July 28, 1950, "I personally do not feel that you have been handling your job in the proper man-

1. This letter was in the following form:
"July 28, 1950
"Mr. S. L. Shannon
"Vice President—Operations
"Eastern Air Lines, Inc.
"Miami, Florida
"Dear Mr. Shannon:
"First let me say that I sincerely appreciate the opportunity that you are giving me to come back on the line as captain.
"Naturally, the six months layoff without pay for my improper handling of flight 703 at Detroit on January 29, 1950 has been hard to take. However, I have had plenty of time to think about it during my enforced absence from the line, and I realize that I was wrong in this

ner." [2]  Thereupon Woolley replied by stating that he had been discharged without the benefit of the grievance procedures provided in the collective bargaining agreement, specifically an investigation and hearing.[3]  In response to this Eastern replied that this was the acceptance of a resignation rather than a discharge, but that the writer would talk to Woolley two days later, and then stated that the company's action had been "based in large part on unsafe flying of" a certain flight and Woolley's "handling" of another flight.[4]  Woolley went to the office of the vice president Shannon and there discussed everything he cared to discuss with him about the matter.  He made no request for any other or further hearing or investigation and he did not ask for any further

case and have been wrong in the other cases in the past, where I have been called on the carpet or disciplined by Management.  I have made up my mind that I must behave myself if I expect to continue as an employee of Eastern Air Lines.

"Therefore, I hereby state that you may consider this letter to be my letter of resignation as an employee of Eastern Air Lines, which you may accept at any time in the future, should you personally feel that I am not handling my job in the proper manner.

"I sincerely hope that I will be allowed to continue as an employee with Eastern for many years to come, and I want to assure you that I shall do everything in my power to keep it that way.

"Very sincerely yours,
"Paul S. Woolley."

2.  The letter is quoted in full:
"Eastern Air Lines
Incorporated
"Member of the National Safety
Council
"Miami International Airport
"Miami 48, Fla.
"February 20, 1956
"Captain Paul S. Woolley
"Eastern Air Lines, Inc.
"Miami, Florida
"Dear Captain Woolley:

"In reference to your letter of resignation dated July 28, 1950 please be advised that I personally do not feel that you have been handling your job in the proper manner and therefore your resignation as an employee of Eastern Air Lines, Inc. is hereby accepted to become effective immediately.

"Please contact your Chief Pilot regarding any matters connected with this termination of your employment with the Company.

"Very truly yours,
"(Signed) S. L. Shannon
"S. L. Shannon
"Senior Vice President"

3.  This letter follows:
"February 27, 1956.
"800 Palerno Avenue
"Coral Gables, Florida
"Mr. S. L. Shannon
"Eastern Air Lines, Inc.
"Miami International Airport
"Miami 48, Florida
"Dear Mr. Shannon:

"Receipt of your letter of February 20, dismissing me as a pilot for Eastern Air Lines, Inc., is acknowledged.

"Under the agreement between Eastern Air Lines, Inc., and the air line pilots in the service of Eastern Air Lines, Inc., as represented by the Air Line Pilots Association, International, Section 29, subsection A.  Paragraph numbered 1, it is provided that a pilot shall not be disciplined or dismissed from the Company without notification in writing as to any such action, and shall not be dismissed or disciplined without an investigation and hearing, provided the pilot makes a written request for an investigation and hearing within seven days after receiving such notification.  Contrary to that provision, I have been dismissed without an investigation and hearing.

"I hereby make written request for an investigation and hearing as provided in the Section referred to.  Will you be kind enough to advise me of the date for the investigation and hearing.

"With kind regards, I am
"Very truly yours,
"Paul S. Woolley,
"800 Palerno Avenue
"Coral Gables, Florida"

4.  This letter follows:
"Eastern Air Lines
"Miami International Airport
"Miami 48, Florida
"February 27, 1956.
"Registered Mail
"Return Receipt Requested
"Mr. Paul S. Woolley
"800 Palerno Avenue
"Coral Gables, Florida
"Dear Mr. Woolley:

"This will acknowledge your letter of February 27, 1956.  My letter to you

specification of charges. On March 2nd he received a further letter from Shannon,[5] adhering to the original action.

Thereafter Woolley asked the Air Line Pilots Association to take the matter to the System Board of Adjustments, which was done. A full hearing was had before the Board, which resulted in a decision favorable to the air line.[6]

Woolley thereafter filed this suit joining the Eastern Air Lines, the Air Lines Pilots Association, International, and the individual members of the Board of Adjustment, as defendants. In it he sought a declaratory judgment determining his rights and a mandatory injunction requiring the Board of Adjustment to "cancel and discharge" their adverse order and requiring the air line defendant to reinstate him with back pay and benefits "unless and until the said Eastern Air Lines, Inc. shall have filed an appropriate order of discharge for cause, and the defendant Eastern Air Lines Pilot System Board of Adjustment has had a complete and adequate hearing within the confines of its jurisdiction and either granted or denied the grievance complained of, if any, for cause."

It will be seen from the prayers of the complaint that its purpose was to review and have set aside the decision of the

---

dated February 20, 1956 was simply an acceptance of your resignation. Consequently I do not think Section 29 of the Agreement between Eastern Air Lines and the Air Lines Pilots Association is applicable. However, if you wish to discuss the matter with me I will be glad to talk with you on Wednesday, February 29, 1956, at 10:00 a. m. in my office.

"For your information, my action in accepting your resignation was based in large part on the unsafe flying of Flight 644 of February 5, 1956 enroute into Boston, and your handling of Flight 647 of February 6, 1956 enroute into Miami. Your conduct in handling those flights confirms other information which has come to my attention from time to time.
 "Very truly yours,
 "(S)   S. L. Shannon,
  "(S. L. Shannon),
  "Senior Vice President."

5. This letter follows:
  "Eastern Air Lines
 "Miami International Airport
  "Miami 48, Florida.
   "March 2, 1956.
"Captain Paul S. Woolley
"800 Palerno Avenue
"Coral Gables, Florida
"Dear Captain Wooley:
 "This is to confirm what I told you February 29th in my office when you came in to discuss your case.
 "I am not changing my decision, and my letter to you of February 20, 1956 still stands.
  "Very truly yours,
  "(S)   S. L. Shannon
   "(S. L. Shannon),
   "Senior Vice President.
"SLS:ch
"Registered Mail
"Return Receipt Requested."

6. The Board's order follows:
   "Before the
 Eastern Air Lines Pilots System
  Board of Adjustment
 "In the Matter of the Grievance of:
  "Paul S. Woolley
 "Decision of The Board of Adjustment
 "The Grievant herein contends that his employment as an airline captain with the Company was wrongfully terminated in that his purported letter of resignation, dated July 28, 1950 and accepted by the Company February 27, 1956, was not intended to have effect as such and that there was not sufficient cause or ground for his involuntary dismissal.
 "The Board finds: 1. That the letter of resignation was given by the Grievant as part of a settlement of a previous grievance wherein he was contesting his dismissal by the Company, such settlement being negotiated by the Grievant and his representatives, officials of the Air Line Pilots Association International, on the one hand and the Company on the other hand;
 "2. That the letter of resignation was given by the Grievant in good faith and was intended by all involved in the settlement to be effective and to be accepted by the Company for good and sufficient reasons but not arbitrarily or capriciously;
 "3. That Grievant's resignation was accepted by the Company for good and sufficient reasons and that the Company did not act arbitrarily or capriciously in accepting Grievant's resignation; and
 "4. That the Grievant's letter of resignation, having been properly accepted by the Company, terminated Grievant's employment with the Company.
 "Decision of the Board: Grievance denied.

System Board of Adjustment. The first question that must be resolved, therefore, is posed by the contention of the appellees that in the circumstances here outlined the courts are in effect ousted of jurisdiction. If this contention is correct we need proceed no further in an effort to appraise the correctness of the Adjustment Board's decision.

The Supreme Court has not directly passed on the question here posed. The statute authorizes the creation by air lines of system boards of adjustment to aid in the stated policy of avoiding any interruption to commerce and providing for the prompt and orderly settlement of labor disputes, including those arising out of the interpretation or application of collective bargaining agreements, 45 U.S.C.A. § 151a.[7] Reference to the various provisions of the Railway Labor Act makes clear that such system boards are given the authority to make final binding decisions touching on the application and construction of collective bargaining agreements, especially if the bargaining agreement expressly includes the right of appeal to such a board and if the articles between the air line and the bargaining agent setting up the system board expressly state, as does that of Eastern Air Lines Pilots System Board of Adjustment, that "decisions of the Board in all cases properly referable to it shall be final and binding upon the parties thereto."

▮ It is to be borne in mind that no air line pilot is required by the collective bargaining agreement or by the law to take his dispute to the system board of adjustment. The two Supreme Court decisions in Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, and Moore v. Illinois Central

R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L. Ed. 1089, make clear the election that is available to the employe. If he determines that he will treat his grievance as involving a determination of rights as an employe under the bargaining agreement and asserts his rights to be retained as an employe he must go to the board for redress. If he accepts the action of the carrier as a final discharge he may sue in court for a breach of the contract of employment. He may not do both.

In light of the fact that any recourse had to the board is the result of voluntary choice, we did not hesitate in the Sigfred case to hold:

"In the light of the declared aims of the Act, we also find it to be the intent of Congress to allow the parties to make the awards of such boards final and binding. Therefore, giving normal effect to these words, we refuse to review a challenged ruling of law, there being no question raised regarding the jurisdiction of the board or the regularity of its proceeding. James Richardson & Son v. W. E. Hedger Transportation Corp., 2 Cir., 98 F. 2d 55." Sigfred v. Pan American World Airways, 5 Cir., 230 F.2d 13, 17.

This Court has held to the same effect in Majors v. Thompson, 5 Cir., 235 F. 2d 449, where at page 451 we said:

"Where the employee has voluntarily applied to the Board for reinstatement an election of remedies has been made which bars the right to litigate before the courts a claim of damages for wrongful discharge. Michel v. Louisville & N. R. Co., 5 Cir., 1951, 188 F.2d 224. See also

"Signed at Miami, Florida, August 1, 1956.

    "S. L. Shannon
    "Co. Member, S. L. Shannon
"R. W. Rivenbark
"Chairman, R.W. Rivenbark
"R. M. Tedlock
"Pilot Member, R. M. Tedlock
    "George A. Smith
    "Co. Member, G. A. Smith."

7. For a statement of the statutory authorization for the creation and statement of the powers of the "system board of adjustment," including the interrelation of the board with the National Mediation Board, see Sigfred v. Pan American World Airways, 5 Cir., 230 F.2d 13 at page 16.

Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13, certiorari denied [351 U.S. 925] 76 S.Ct. 782 [100 L.Ed. 1455]; Coats v. St. Louis-San Francisco R. Co., 5 Cir., 1956, 230 F.2d 798."

There can be no doubt here that the board had jurisdiction of the dispute, at least as to any challenge by appellant because he invoked its jurisdiction. It cannot therefore be questioned that, in the language of the articles establishing this particular System Board of Adjustment the case was "properly referable to it."

■ We hold therefore that the rule of stare decisis requires that we adhere to the Sigfred and Majors opinions and hold that the complaint did not state a claim against defendants upon which relief could be granted.

As has been heretofore said, the Supreme Court has not held, as has this Court in the several cited cases, that, granted jurisdiction in the Board, its decisions on either factual or legal or mixed issues, are not reviewable in court. We therefore deem it appropriate to discuss briefly the other issues raised on the appeal.

Appellant contends that the trial court erred in entering a summary judgment on the theory that the issue as to the correctness of appellant's dismissal had been clearly presented to the Board and that the Board's finding that the air line acted "for good and sufficient reasons and * * * not arbitrarily or capriciously" deprived it of "authority to set aside the Board's decision."

It is not necessary, in the view we take of the case, to determine whether the proceedings in the trial court partook of the nature of a review of the Board's action or of a trial de novo.[8] All parties proceeded in the trial court on motions for summary judgment on the assumption that the trial court had the power to enter final judgment on the record of the proceedings before the Board.

The Board construed the letter of resignation of July 28, 1950, as permitting the air line to accept it "for good and sufficient reasons but not arbitrarily or capriciously." It heard extensive testimony and considered documentary evidence which fully warranted the Board's decision that the air line had good and sufficient reason for accepting the resignation. The record would warrant a finding that Woolley repeatedly knowingly and intentionally disregarded company rules for the protection of the safety of its passengers and that he showed a callous attitude towards these rules and regulations. The Board accepted some of this testimony, as it said, only as bearing on the sufficiency of reasons for accepting the resignation and not to be considered as being sufficient basis for grounds of discharge, if the Board held the resignation ineffective. As we have said, the Board held the evidence constituted "good and sufficient reason" to accept the resignation.

The trial court equated the finding of the Board that there was good and sufficient reason to accept the resignation with a finding that ample grounds existed for a discharge, and without expressly deciding whether the action of the defendant air line was an authorized acceptance of an outstanding resignation or a discharge for cause, stated that

"The issue being thus clearly presented to the Board and the Board having decided that the Defendant Eastern Air Lines acted 'for good and sufficient reasons and that the Company did not act arbitrarily or capriciously', this Court does not have any authority to set aside that Board's decision."

We think this decision was correct. It is clear that if the action of Eastern is to be construed as a discharge then there was sufficient competent evidence of unsafe flying on the two specific flights #644 and 647 to support not only a finding of sufficient reason for accept-

---

8. Under our initial determination that the suit could not be maintained, we would of course not reach this question.

ing the resignation but also to support a finding of adequate grounds for discharge. All of the testimony of co-pilot Hughes, together with his written report and the verifying records of communications were introduced and received free of any objection that they were not relevant for all purposes. They made out a case of dangerous and unsafe approach to the Boston airport on flight 644 and a wilful flight through a danger area at Patrick Air Force Base in the face of specific warning to stay clear on flight 647. The latter act was accompanied by credible evidence of an attempt by Woolley to misstate the time when reporting from Vero Beach.

There is no merit in the contention that the issue of the validity of his discharge (if it is to be so considered) was not before the Board. Although the letter of February 20th notifying Woolley that his resignation was accepted did not specify the "precise charge against him," the letter of February 27th did do so, and it also provided an opportunity for a hearing, as contemplated in section 29 of the contract of employment. At least Wooley did not make any request for more specific statement or additional hearing. When he thereafter appealed his case to the Board, he waived any procedural defect such as the right to further specific charges or additional hearing and the Board was justified in making its decision, so long as it had ample basis for deciding the case on the evidence adduced as to the two charges that were actually made. The evidence here was amply sufficient.

 Finding as we do that the Board of Adjustment had full jurisdiction invoked by appellant himself, and that there is no contention that the Board was not properly constituted or that there were other circumstances that would permit a collateral attack, the decision of the Board was final and binding and may not be reviewed. Further, should this view formerly expressed by this Court be untenable, nevertheless we find that on the record here the finding of the trial court that the decision of the Board was fully supported and thus was not reviewable on the merits is right.

The judgment will be affirmed.