**William J. GORDON, Plaintiff,**

v.

**EASTERN AIR LINES, INC., a Delaware corporation, Defendant.**

**No. 66-C-9-H.**

United States District Court
W. D. Virginia,
Harrisonburg Division.

March 24, 1967.

airport. He now asks this Court to reinstate him without loss of seniority and with the benefit of back pay from the date of his discharge. Defendant Eastern Airlines has moved to dismiss the complaint on the ground that, among other things, the Court has no jurisdiction over the subject matter and that the complaint shows on its face that it is barred by the statute of limitations.

A brief examination of the facts surrounding plaintiff's discharge reveals that shortly after receiving his letter of discharge, plaintiff filed a grievance under § 29 of the Agreement between Eastern Airlines and the Air Lines Pilots Association International. Two preliminary hearings were then held but neither resulted in reinstatement. Gordon appealed to the Eastern Air Lines Pilots' System Board of Adjustment where the majority decision of a three member board was delivered on November 25, 1963. The decision upheld Gordon's discharge for reasons set forth as, follows:

> Due to the over-all employment record and lack of responsibility as an employee, it is the majority opinion of the Board to uphold the discharge of W. J. Gordon.
>
> The primary reasons for the Board's decision is (sic) based on the employee's sub-standard record (rather than his flying record), which the employee himself recognized by signing a resignation in 1955, and his subsequent failure to improve to the necessary standards.

J. Sloan Kuykendall, Douglas M. Swift, Jr., Kuykendall & Whiting, Winchester, Va., for plaintiff.

W. Glen Harlan, Gambrell, Harlan, Russell & Moye, Atlanta, Ga., Lewis F. Powell, Jr., E. Milton Farley, III, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for defendant.

## OPINION

MICHIE, District Judge.

William J. Gordon was formerly a pilot for Eastern Airlines. On April 12, 1963 he was discharged as a result, according to the letter which terminated his employment, of his "overall employment record and lack of responsibility as an employee." One of the things that brought about the investigation by Eastern Airlines which resulted in Gordon's discharge was his handling of Flight 526 of April 4, 1963 at a Philadelphia

The lone dissenter, in a letter dated December 2, 1963, objected to the majority decision because he thought it resulted from two unexpressed and actual reasons—the main one of which, according to the dissenter, was Captain Gordon's general appearance and demeanor as observed during the course of the hearings following his discharge.

The essence of plaintiff's complaint apparently is that any misconduct on his part which the Board could consider was

not serious enough to justify his dismissal. He also claims that certain alleged irregularities in the administrative procedure—the improper admission of his past employment record and the failure to advise him of his right to counsel in the original hearing on his discharge—were tantamount to a denial of due process.

The pivotal issue upon which this case turns is whether the two year statute of limitations provision or the requirement that decisions of Boards of Adjustment be "final and binding", both contained in Section 3 of the Railway Labor Act (45 U.S.C. Section 153), apply to the Airlines System Boards of Adjustment. If these provisions are applicable to the airlines system boards as they are to the NRAB (National Railway Adjustment Board), not only will the two year statute of limitations preclude the bringing of the instant action but case law concerning the finality of board decisions, growing primarily out of railroad litigation, will dictate a refusal of review by this Court except for an examination of Gordon's due process allegation.

If isolated and read superficially, § 201 of the Railway Labor Act (hereinafter 45 U.S.C. § 181) would indicate that § 3 of the same Act (45 U.S.C. § 153) should not be construed as having any effect on minor labor disputes, like this, which arise in the airlines industry. However, when § 181 is read in the light of the expressed and implied intent of the entire Railway Labor Act (the intent to minimize interruption in the nation's rail and air transportation services caused by strikes and labor disputes) and in the light of the Act's legislative history, the meaning of § 181 takes on a somewhat different perspective. See Intern. Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 685–696, 83 S.Ct. 956, 10 L.Ed.2d 702 (1963) for a general discussion of the intent and history of the Railway Labor Act.

The opening portion of § 181 reads as follows:

All of the provisions of Sections 151, 152, and 154–163 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce * * *

It will be noted that § 153, which established the National Railroad Adjustment Board, was not made applicable to air carriers expressly by § 181. But § 184 of Title 45, enacted as part of the same bill, specifically provides for systems, groups or regional boards of adjustment for air carriers with express authority to enforce §§ 151–163 which, of course, includes § 153.

Plaintiff argues that by not including § 153 in the above-quoted enumeration of provisions in § 181, Congress intended that § 153 should not apply to the airline industry. Defendant contends that numerous decisions have held or assumed, because of the unity of purpose in the Railway Labor Act with respect to both the National Railway Adjustment Board and the Airlines System Boards of Adjustment that the Airlines System Boards are the equivalent of the Railway Adjustment Board for all material purposes. If the latter contention is correct, then it would be reasonable to apply § 153's statute of limitations provision [§ 153(r)] and finality provision [§ 153(m) & (p)] to decisions of the Airlines System Board of Adjustment.

From an examination of the case authority cited by the parties, it appears that defendant's position, while not completely unassailable, is more persuasive. The 1966 amendment to the Railway Labor Act (P.L. 89–456, 80 Stat. 208), if anything, strengthens his position. See Brotherhood of Railroad Trainmen v. Denver & R. G. W. R. Co., 370 F.2d 833 (10th Cir. 1966) discussing the amendment and how it restrains the scope of judicial review. Not only would the stated purpose of settling disputes in the airlines industry in a prompt and orderly manner be severely hampered by not applying most of the provisions of § 153 to these disputes, but refusal to make such an application would be a

refusal to recognize why § 153 was not originally extended to airlines. As I read the Railway Act and the judicial decisions construing it, this initial omission of § 153 in 1936 was merely to postpone the establishment of a National Air Transport Adjustment Board while the airlines industry grew. It was not intended to provide an interim period of confusion and chaos. A case which is particularly relevant is Intern. Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956 (1963). It arose when six individuals who had been discharged from their employment by Central Airlines instituted suit in a federal district court to enforce an award of an airlines system board of adjustment. In the process of declaring that jurisdiction existed in the district court to enforce an award granted to the former airlines employees, the majority opinion demonstrated a marked willingness to avoid application of "the many state laws" to matters not specifically covered by the Railway Labor Act but left to judicial determination. Speaking to the necessity of applying uniform federal law to the enforcement of airline labor contracts the Court said at p. 691, 83 S.Ct. at p. 961:

> (These contracts') validity, interpretation, and enforceability cannot be left to the laws of the many States, for it would be fatal to the goals of the Act if a contractual provision contrary to the federal command were nevertheless enforced under state law or if a contract were struck down even though in furtherance of the federal scheme. (footnote 15, omitted here, further illuminates the problems which might be created by application of various state laws).

I cannot help but assume that Congress would want the same reasoning applied to the instant case as far as a statute of limitations is concerned. Apparently the *express* establishment of a statute of limitations for minor disputes arising out of airline industry grievances is also one of those matters left to judicial determination. It is not difficult to imagine the inconsistent decisions that would ensue should an opposite assumption be made, should many different state statutes of limitations have potential application to airline grievances of the same nature. Having decided to apply uniform federal law in this matter, it is easy to go one step further and assume that Congress intended the airline industry disputes to have the same statute of limitations as do the disputes in the railroad industry.

■ Accordingly, I now hold that for all practical purposes, the same two year statute of limitations applicable to railroad disputes via § 153 of Title 45 U.S.C. also applies to similar disputes arising in the airline industry. The record shows that in the present case, this statute has run and the plaintiff's action is therefore barred.

Even if the above ruling is incorrect, plaintiff has little chance of prevailing in view of his having elected to take his dispute to the Airlines System Board of Adjustment. As the Fifth Circuit said in Woolley v. Eastern Air Lines, Inc., 250 F.2d 86, 90 (1957):

> Reference to the various provisions of the Railway Labor Act makes clear that such system boards are given the authority to make final binding decisions touching on the application and construction of collective bargaining agreements, *especially if the bargaining agreement expressly includes the right of appeal to such a board and if the articles between the airline and the bargaining agent setting up the system board expressly state, as does that of Eastern Air Lines Pilots System Board of Adjustment, that 'decisions of the Board in all cases properly referable to it shall be final and binding upon the parties thereto.* (Emphasis supplied)

The majority in *Woolley* went on to state that in light of the plaintiff's election and the finality which a Board's decision was to be accorded, it could not

**214**

review plaintiff's case on the merits. *Woolley,* supra at 90–91. I am fully in accord with this position and think that if and when the Supreme Court directly passes on the question with respect to airlines, it, too, will adopt the Fifth Circuit view.

 Notwithstanding the inability of a district court to review the present case on its merits, it is true that the Court may examine the administrative proceedings that have occurred to see whether plaintiff's due process rights have been violated. Unfortunately for the plaintiff the Supreme Court and the Fourth Circuit have laid down a rather strict test for a court to apply in making such a limited review. Under the principles established by Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), a district court, in my opinion, should not set aside a decision of a system board of adjustment unless it is "wholly baseless and without reason." See also Hanson v. Chesapeake & Ohio Railroad Co., 367 F.2d 134 (4th Cir. 1966). For reasons already stated, I do not agree with Plaintiff's argument that these cases are inapplicable here merely because they are railroad and not airlines cases. The Board decision in the instant case does not even come close to being wholly baseless and without reason. As for the specific allegations of irregularities, amounting to violation of due process, the admission of certain evidence and the failure to advise plaintiff of a right to counsel—the *Gunther* case, supra and Edwards v. St. Louis-San Francisco R. R. Co., 361 F.2d 946, 954 (7th Cir. 1966), respectively, refute plaintiff's contentions.

In accordance with the foregoing, defendant's motion to dismiss is granted. I will ask counsel for the prevailing side to prepare an order carrying out the import of this opinion, submit it to the other side for approval or criticism and then, with the necessary copies, to the Court for entry.