**J. L. GIBSON, Plaintiff-Appellee,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.**

No. 30522.

United States Court of Appeals, Fifth Circuit.

April 26, 1971.

Rehearing Denied May 27, 1971.

James P. Simpson, Dallas, Tex., Charles S. Pipkin, Beaumont, Tex., for defendant-appellant Missouri Pacific Railroad Co.; Strong, Pipkin, Nelson, Parker & Powers, Beaumont, Tex., of counsel.

Ernest L. Sample, Beaumont, Tex., for plaintiff-appellee.

Before SKELTON *, Judge, and MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an action seeking the review and setting aside of an award of the National Railroad Adjustment Board, First Division (hereafter, the NRAB), pursuant to Section 3 of the Railway Labor Act of 1926, c. 347, 44 Stat. 577, 45 U.S.C.A. § 153, as amended (Supp.1971), ordering the Missouri Pacific Railroad Company (hereinafter, the railroad) to reinsert appellee Gibson's name on its posted seniority list, but refusing to reinstate Gibson to active employment as a locomotive engineer. The district court held that it had jurisdiction to set aside an award of the NRAB which is clearly arbitrary as being without foundation in

* Honorable Byron C. Skelton, U. S. Court of Claims, sitting by designation.

reason or fact, and upon that basis set the award aside and remanded with instructions to make new and appropriate findings. The railroad appeals. We reverse.

J. L. Gibson entered the employ of the railroad in 1927 and held the position of locomotive engineer when he was forced to leave the active service of the railroad. On December 5, 1950, he sustained a disabling back injury while in the course of his employment and subsequently recovered a judgment of $32,500 plus interest in a state action filed pursuant to the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. (1964). On July 1, 1958, Gibson requested reinstatement as a locomotive engineer claiming that his disability had abated. The railroad refused this request, taking the position that by claiming damages for permanent disability in his FELA suit, he was estopped for seeking reinstatement. Gibson thereafter instituted a grievance proceeding in accordance with the Rules and Working Conditions Agreement which was in effect between the railroad and Gibson's union, the Brotherhood of Locomotive Engineers, pursuant to the provisions of the Railway Labor Act, supra, 45 U.S.C.A. § 151, et seq., claiming that he should be returned to service and paid for all lost time since July 1, 1958, the date he applied for reinstatement. The Union and the railroad were unable to resolve the dispute through their established grievance procedure and, as a consequence, the Union submitted the dispute to the NRAB. After a determination of a Special Board of Adjustment that the dispute had not been timely filed, but that only the claim for back pay was barred and the Board still had jurisdiction to determine whether Gibson had been wrongfully denied reinstatement, the First Division of the NRAB, sitting with a referee appointed to break a tie, issued the award here in question on October 31, 1963.[1]

In April, 1965, Gibson filed an action in state court against L. D. Johnson, the union official who handled the arbitration of his dispute with the railroad, for damages resulting from alleged misfeasance in handling the claim. The Texas Court of Civil Appeals, sitting at Tyler, Texas, affirmed the trial court's entry of summary judgment for the defendant, holding that Gibson could not have prevailed on his claim before the NRAB because he had filed suit against the railroad and collected damages for total and permanent disability under the FELA and was thereby estopped to assert a right to return to work and that the

1. The award stated in part:
 Taking into consideration all the facts as developed in this case we do not feel that it was proper for the carrier to notify the claimant that his services had been terminated and his employment relationship severed since he was still on the posted seniority lists.
 In support of this view this Division adopts the position of Award 17452 by this division which reads in part as follows: "Claimant technically has not been discharged by the carrier but has been paid in advance what the Court found to be due him for being permanently deprived of his work."
 An interpretation of the award, issued by the NRAB on March 18, 1964, stated:
 2. Award 20369 was rendered on the same reasoning and logic of Award 17452 which reads in part:
 "Claimant technically has not been discharged by carrier but has been paid in advance what the Court found to be due him for being permanently deprived of his work."
 Some question is raised in argument now that the omission of the sentence following this quotation from that award reading, "Consequently he is automatically on perpetual leave of absence" has some significance. It did not seem so to this Referee because it was the intention of Award 20369 that Jay Lee Gibson is entitled to all the benefits the same as if he were on a retired basis as an employee.
 3. It was the opinion of the Referee that termination of the claimant's employment relationship was not proper since his name was retained on the posted seniority lists; but it was not intended to put the claimant back on the engine or return him to engine service as it was felt his testimony and that of expert medical witnesses proved that such would be unwise, and the award so held.

Union's conduct in presenting Gibson's "fruitless claim before the NRAB could not, as a matter of law, have been a causal factor in the adverse ruling". Gibson v. Johnson, Tex.Civ.App., 1967, 414 S.W.2d 235 (Writ ref'd., n. r. e.), cert. den. 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135.

 The action now before us was commenced on June 1, 1966, some two years and seven months after the NRAB issued the award for which review is sought. We hold that Gibson's action is barred by the applicable statute of limitation and therefore find it unnecessary to consider the district court's holding on the merits.[2]

Prior to June 20, 1966, the Railway Labor Act provided no statutory right of review to an unsuccessful claimant before the NRAB. See Section 3, First (p) of the original Act as amended June 21, 1934, c. 691, § 3, 48 Stat. 1189, 45 U.S.C.A. § 153 (1954).[3]

On June 20th of that year, Section 3 was amended to provide a statutory method of review of unfavorable NRAB awards by way of a petition for review to an appropriate district court, which was given the power to set aside such an award "for failure of the division to comply with the requirements of the [Railway Labor Act], for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order". Public L. 89–456, §§ 1, 2, 80 Stat. 208, 209, 45 U.S.C.A. § 153, First (q) (Supp.1971).[4]

---

2. The defense of limitations was affirmatively pleaded by the railroad and preserved as a defense in the pretrial order. The district court, however, did not rule on the limitations issue.

3. Prior to June 20, 1966, Section 3, First (p) provided:

If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board.

4. Section 3, First (q), as amended, now reads:

If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order

In both the pre-1966 and post-1966 versions of Section 3, any review by the district court is barred after two years. Section 3, First (q), as amended (1934), 45 U.S.C.A. § 153, First (q) (1954) and Section 3, First (r), as amended, (1966), 45 U.S.C.A. § 153, First (r) (Supp.1971). The provisions are identical:

All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.

■ This action would obviously be barred if it were brought pursuant to the 1966 amendments. However, the cause of action accrued long before the enactment of that amendment and the complaint was filed some 19 days prior to its effective date. As a result, even though the district court treated the action as a petition to review under the amended Section 3, First (q), this is not properly an action authorized by the Railway Labor Act. Nor can this be considered a suit for damages for wrongful dismissal since the prior submission to the NRAB of a grievance as to the validity of a discharge from employment, as was done here, precludes the seeking of damages in a subsequent common law action. Union Pacific Railroad Company v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959). Instead, we can only conclude that this is an action to review an award claimed to result from a denial of due process of law. As was said by the Seventh Circuit prior to the 1966 amendment in Ellerd v. Southern Pacific Railroad Co., 7 Cir., 1957, 241 F.2d 541, 544:

* * * in the absence of any question as to the regularity of proceedings before the board, for lack of notice or other defect preventing due process of law, the district court has no right to review an order of the board. If that

to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the

body has jurisdiction and proceeds according to constitutional guarantees, its decision is, in the words of the statute, final.

See Union Pacific Railroad Company v. Price, supra, 360 U.S. at 616, 79 S.Ct. 1351; Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13, cert. den. 351 U.S. 925, 76 S.Ct. 782, 100 L. Ed. 1455.

Even though this action is one not specifically provided for by the pre-1966 Railway Labor Act, we feel that it is sufficiently "based upon the provisions of [Section 3]" of the Act as to be covered by the two-year statute of limitations provided in Section 3, First (q) of the 1934 Act. It is well established that "[t]he purpose of Congress is a dominant factor in determining meaning" in a statutory construction. United States v. C.I.O., 335 U.S. 106, 112, 68 S.Ct. 1349, 1352, 92 L.Ed. 1849, 1856 (1948), particularly in interpreting "the meaning of a statute as applied to a situation which Congress did not foresee * *". Delany v. Moraitis, 4 Cir., 1943, 136 F. 2d 129, 132. Here Congress did not contemplate any review of awards of the NRAB except as provided by Section 3, First (p) of the 1934 Act, but it did intend that such awards would be final and binding and subject to extremely limited review. As the Supreme Court has said:

Plainly the statutory scheme as revised by the 1934 amendments was designed for effective and final decision of grievances which arise daily, principally as matters of the administration and the application of the provisions of collective bargaining agreements. Union Pacific Railroad Company v. Price, supra, 360 U.S. at 616, 79 S.Ct. at 1359.

While Congress did not contemplate nor did it provide for the species of action here before us prior to 1966, but which the courts found necessary to engraft upon the statutory scheme to insure con-

order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28.

stitutional fairness, this action is as much based on the provisions of Section 3 as the statutorily authorized action to enforce an award entered against an employer. Therefore, we conclude that while Congress did not foresee this extrastatutory mode of review, it was its intention that *all* methods of reviewing NRAB awards be barred unless "begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after". Cf. Gordon v. Eastern Air Lines, Inc., W.D.Va., 1967, 268 F.Supp. 210.

In rendering this decision, it is important that we point out that we express no view on the district court's decision on the substantive issues presented by the case, as expressed in its thoughtful opinion of June 17, 1970.

The judgment of the district court is hereby reversed.

Reversed.