PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FOTIOS G. LEKAS,
            *Plaintiff-Appellant,*

v.                                                      No. 00-2457

UNITED AIRLINES, INCORPORATED,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-1191-A)

Argued: January 22, 2002

Decided: February 28, 2002

Before WILKINS and NIEMEYER, Circuit Judges, and
Catherine C. BLAKE, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Wilkins and Judge Blake joined.

## COUNSEL

**ARGUED:** Karen Mary Kennedy, ROSENFELD, SHEARER, JOR-
GENSON & KENNEDY, P.C., Fairfax, Virginia, for Appellant. Gary
S. Kaplan, SEYFARTH SHAW, Chicago, Illinois, for Appellee. **ON
BRIEF:** Frederick S. Mittelman, ROSENFELD, SHEARER, JOR-
GENSON & KENNEDY, P.C., Fairfax, Virginia, for Appellant.

**OPINION**

NIEMEYER, Circuit Judge:

Fotios Lekas, an airline employee, commenced this action on July 20, 2000, under the Railway Labor Act, 45 U.S.C. § 153 First (p), to enforce an arbitration award of the System Board of Adjustment dated February 17, 1998. Because this action was commenced more than two years after it accrued, the district court dismissed it as time-barred under 45 U.S.C. § 153 First (r). We affirm.

I

Lekas, a mechanic who worked at Dulles International Airport for United Air Lines, Inc. ("United"), was fired on October 31, 1996, for threatening and intimidating a supervisor, in violation of United's Rules of Conduct. Lekas challenged his termination through the mandatory grievance procedure of the Collective Bargaining Agreement between United and his union, the International Association of Machinists and Aerospace Workers ("IAMAW"). Following a hearing, an arbitrator from the United-IAMAW System Board of Adjustment (the "Board") entered an opinion and award dated February 17, 1998, in which the arbitrator reduced Lekas' termination to a 30-day suspension and reinstated Lekas "to employment, with seniority unimpaired." The Board also ordered that Lekas be "paid for all time lost except for 30 days." Explaining his decision, the arbitrator stated that Lekas' conduct, while "clearly impermissible," did "not rise to the level of a dischargeable offense."

Pursuant to the Board's order, United reinstated Lekas on March 16, 1998. It refused, however, to remit back pay for time lost until Lekas supplied United with proof, through W-2 forms or other substantiation, of his earnings from other sources after he was fired by United. United intended to subtract those earnings from the back pay owed to Lekas. Believing that he was entitled to back pay without any deduction for interim earnings, Lekas refused to provide the requested information. This standoff became the basis for this action.

During the period between his reinstatement in March 1998 and June 1999, Lekas' union told Lekas that it was trying to work out the

dispute with United. But after more than a year had passed, Lekas apparently concluded that the discussions were going nowhere, and he elected, on June 18, 1999, to file an action in Virginia state court to enforce the arbitration award. For unknown reasons, Lekas voluntarily dismissed that action two months later.

In October 1999, the union advised Lekas that United was filing a motion for clarification of the arbitrator's award and that Lekas should wait until that motion was resolved before taking further action. There is no evidence, however, that United undertook or intended to undertake any action to clarify the arbitrator's award. The record shows only that United continued to insist that it was entitled to proof of Lekas' interim earnings before remitting Lekas' back pay. Apparently changing its advice or amending its original position, the union advised Lekas on November 17, 1999, that United would not pay the award voluntarily without deducting interim earnings. During that same period, Lekas' lawyer advised Lekas to concede the issue and accept the back pay amounts with the deductions for interim earnings.

Finally, in May 2000, the union repeated to Lekas that United would pay Lekas' net back pay if Lekas would "either state under oath that [he] had no interim earnings or if [he] would provide [his] W-2 forms for the period prior to [his] reinstatement." But Lekas continued to insist on receiving the unreduced amount of back pay.

On July 20, 2000, two years and five months after the Board's February 17, 1998 order, Lekas commenced this action under the Railway Labor Act, 45 U.S.C. § 153 First (p), to enforce the order. On United's motion to dismiss, the district court found that Lekas' action was "barred by the two year statute of limitations prescribed in the Railway Labor Act" and therefore dismissed Lekas' claim.[1] This appeal ensued.

---

[1]In addition to his § 153 claim, Lekas alleged in separate counts a violation of the Fair Labor Standards Act and breach of contract. These counts were dismissed voluntarily.

II

Lekas filed his claim for enforcement of the Board's order under 45 U.S.C. § 153 First (p),[2] which provides in pertinent part:

> If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States . . . a petition.

The statute of limitations contained in § 153 requires that any action be commenced "within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after." 45 U.S.C. § 153 First (r). The district court applied this statute of limitations to dismiss Lekas' action.

Lekas concedes that § 153 First (r) supplies the applicable limitations period for his action. He contends, however, that his action, filed in July 2000, was not untimely because his cause of action for United's failure to comply with the Board's order did not "accrue" until either November 17, 1999, or June 18, 1999. Noting that a cause of action "can only begin to accrue after the date has passed by which the defaulting party has failed to perform," Lekas points to the fact that the Board's award did not specify a date for performance. He argues, therefore, that a cause of action to enforce such an order does

---

[2]There may be some doubt regarding Lekas' ability to file such an action. When the provisions of the Railway Labor Act were made applicable to the airline industry in 1936, Congress excluded 29 U.S.C. § 153 (relating to the resolution of disputes through arbitration before the National Railroad Adjustment Board) from applicability. Without more, the question arises whether Lekas, who is in the airline industry, can state a claim under § 153. However, because the exclusion of § 153 left some gaps in adjudicating airline employee grievances, the Supreme Court has looked in some degree to § 153 for guidance in handling airline grievances. *See International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc.*, 372 U.S. 682, 685, 694 & n.18 (1963). Because we conclude that any § 153 claim that Lekas might have is time-barred, we need not decide whether Lekas has a claim under § 153.

not accrue until the plaintiff discovers, or in the exercise of due diligence should have discovered, the acts constituting the alleged wrong, in this case the failure to comply. Initially, Lekas claims that he first discovered his cause of action against United on November 17, 1999, when his lawyer told him to give up and accept back pay with deductions. Alternatively, he concedes that the date on which he filed his state court action, June 18, 1999, might also be applicable. He observes, "both of these dates objectively point to [his] wake up call. Either date defines the moment when [he] knew or should have known that he would not get back wages without a fight." And, of course, either date for commencement of the limitations period would make his action timely.

United, too, concedes that § 153 First (r) is the appropriate statute of limitations to apply, even though it recognizes that § 153 was excluded from application to the airline industry. *See supra* note 2. United believes that, under *Central Airlines*, the limitations period in § 153 can appropriately be borrowed to enforce Board orders. *See Ass'n of Flight Attendants v. Republic Airlines*, 797 F.2d 352, 356-57 (7th Cir. 1986) (applying the two-year statute of limitations to litigation over airline System Adjustment Board awards); *Gordon v. Eastern Airlines, Inc.*, 268 F. Supp. 210, 213 (W.D. Va. 1967) ("The same two year statute of limitations applicable to railroad disputes via § 153 of Title 45 U.S.C. also applies to similar disputes arising in the airline industry"). In adopting this position, United implies that it is giving Lekas the benefit of doubt because, it notes, authority also exists for a shorter statute of limitations. *See, e.g.*, *Barnett v. United Airlines, Inc.*, 738 F.2d 358, 364 (10th Cir. 1984) (applying six-month statute of limitations borrowed from § 10(b) of the National Labor Relations Act).

At bottom, the parties agree that Lekas' claim, because it is brought under § 153, is subject to the statute of limitations included in § 153 First (r).

The time period specified by § 153 First (r) begins when the cause of action for enforcement "*accrues*." And a cause of action accrues when it "come[s] into existence as a legally enforceable claim." Merriam Webster's Collegiate Dictionary 8 (10th ed. 1994). While this definition of "accrue" does not consider a plaintiff's knowledge about

his cause of action, we recognize that such an entirely objective inter-
pretation would bar many claims before they could, in a practical
sense, be brought. Accordingly, in order for a claim to exist, the plain-
tiff must have some elemental knowledge of it. This does not mean,
however, that a plaintiff must have complete knowledge of all ele-
ments or a legal understanding of the nature of the claim before his
claim exists. Such a completely subjective interpretation would defeat
the public-interest policy for limitations periods, that at some point
"the right to be free of stale claims . . . comes to prevail over the right
to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117
(1979) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency,
Inc.*, 321 U.S. 342, 349 (1944)). As the *Kubrick* Court explained:

> [Statutes of limitations] are statutes of repose; and although
> affording plaintiffs what the legislature deems a reasonable
> time to present their claims, they protect defendants and the
> courts from having to deal with cases in which the search
> for truth may be seriously impaired by the loss of evidence,
> whether by death or disappearance of witnesses, fading
> memories, disappearance of documents, or otherwise.

444 U.S. at 117. With the competing interests in mind, the Supreme
Court held in *Kubrick* that a cause of action under the Federal Tort
Claims Act "accrues," not when the plaintiff knew or should have
known of his legal rights, but when he possessed sufficient facts about
the harm done to him that *reasonable inquiry* would reveal his cause
of action. *Id.* at 122-24; *accord Nasim v. Warden, Md. House of Cor-
rection*, 64 F.3d 951, 955 (4th Cir. 1995) (applying the same defini-
tion to limitations period for bringing an action under 42 U.S.C.
§ 1983). Accordingly, the "inquiry notice" standard applies to those
statutes of limitations whose period begins when the cause of action
accrues. *Nasim*, 64 F.3d at 955.

In the case before us, Lekas' § 153 claim to enforce the Board's
order came into existence when United failed to comply with the
order. If the Board had directed United to remit back pay within a
specified time, the failure to comply would have occurred when pay-
ment was not made within that specified time. But because no time
was specified, noncompliance arose upon the failure to make payment
by the end of the day the order was entered, or certainly by a reason-

able time thereafter. *See, e.g.*, *Jones v. Seaboard System R.R.*, 783 F.2d 639, 643 (6th Cir. 1986) (holding that the employee's cause of action accrued on the date that the Board issued its award). United's alleged failure to comply with the Board's order became certain when United expressed to Lekas on March 16, 1998, that, while willing to reinstate Lekas, it was unwilling to remit back pay without substantiation of Lekas' interim earnings and then only the net amount. Because Lekas believed that United, in taking that position, was disobeying the Board's order, he could have filed his claim — the same claim he eventually filed over two years later — on that day. Even if Lekas did not fully appreciate the legal basis for his claim in March 1998 — a point he does not maintain in his brief — Lekas was certainly put on inquiry notice sufficient to charge him at that time with knowledge of his claim. *See Kubrick*, 444 U.S. at 123; *Nasim*, 64 F.3d at 955. In these circumstances, Lekas' action to enforce the Board's order was untimely when filed on July 20, 2000.

### III

Alternatively, Lekas contends that the period of limitations should be extended under either the doctrine of equitable tolling or the doctrine of equitable estoppel. He argues that, in October 1999, a union representative told Lekas that United was seeking a clarification from the Board and that Lekas should wait until United received a definitive ruling before filing suit. Lekas asserts that he relied on this communication, believing that as soon as an arbitrator clarified the award one way or the other, United would pay him what was owed. Lekas argues that he waited 14 months for clarification, during which time the running of the limitations period should have been tolled.

"The doctrines of equitable tolling and equitable estoppel have a common origin; they are based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). The element common to both doctrines is some form of misconduct by the defendant. Equitable tolling applies where a defendant, by active deception, conceals a cause of action. *Id.* And equitable estoppel applies where "the defendant engages in intentional misconduct to

cause the plaintiff to miss the filing deadline," even though the plaintiff knows that it exists. *Id.*

In this case, there is no evidence that United acted either to conceal a cause of action from Lekas or to cause Lekas to miss the filing deadline. From March 1998 onward, United consistently maintained its position that it would remit to Lekas only the net back pay after deducting Lekas' other interim earnings.

Even if we were able to credit Lekas' claim that the union told him that United was seeking clarification from the Board, such a communication would not support application of either equitable doctrine. The fact that United may have been seeking clarification from the Board to support its position does not amount to evidence that United either concealed Lekas' cause of action or caused Lekas to miss a filing deadline. United never did or said anything to suggest that, if Lekas would delay or forego filing suit, he would be compensated. Thus, this case is clearly distinguishable from the cases cited by Lekas in which equitable estoppel or equitable tolling has been applied. *See, e.g.*, *Dement v. Richmond, Fredericksburg & Potomac R.R.*, 845 F.2d 451, 461 (4th Cir. 1988) (tolling the limitations period where appellants were "affirmatively asked" to refrain from suit and were told that their problem would be solved without the "need for civil suit"); *United States ex rel. Humble Oil & Refining Co. v. The Fidelity & Cas. Co.*, 402 F.2d 893, 896-97 (4th Cir. 1968) (invoking equitable estoppel where the defendant acknowledged liability and there was an explicit promise to pay the plaintiff's outstanding debts, followed by extensive negotiations, which continued until the limitations period had run).

In any event, Lekas' equitable arguments are logically inconsistent with his conduct. Even if the union's advice to Lekas could be attributed to United, that advice was not given until *after* Lekas had already filed his state court action. Lekas thus had already concluded that it was necessary to file suit to enforce the Board's order. In addition, Lekas' lawyer told Lekas to give up on November 17, 1999 — at least three months before the limitations period would expire — making Lekas' request for any equitable remedy even less compelling.

In sum, we reject Lekas' arguments that the limitations period was tolled by either the doctrine of equitable tolling or the doctrine of equitable estoppel.

IV

Finally, Lekas contends the district court erred by failing to remand this case to the Board for clarification of when United had to comply with the Board's order. To the extent that Lekas had any legitimate right to ask the district court to remand this case to the Board to clarify its order, that right would have arisen under § 153 First (q), which provides that an employee who "is aggrieved by . . . the failure of the division to include certain terms in [an] award . . . may file [suit] in any United States district court in which a petition under paragraph (p) could be filed," whereupon the district court "may remand the proceeding to the division for . . . further action." An action under paragraph (q) has the same two-year limitations period that is applicable to any claim under § 153.

Because a claim under paragraph (q) would be based upon the Board's failure to include a specified time for compliance within the award, such a cause of action would have accrued on the date when the order issued. By reading the order, Lekas would have become fully aware of the claim. Accordingly, under this alternative theory, Lekas' request for remand would still be time-barred.

For the reasons given, the judgment of the district court is

*AFFIRMED*.