[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12624
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 4, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00688-CV-J-33-TEM

BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN
GENERAL COMMITTEE OF ADJUSTMENT CSX TRANSPORTATION
NORTHERN LINES,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 4, 2008)**

Before BIRCH, BLACK and MARCUS, Circuit Judges.

BIRCH, Circuit Judge:

This appeal under the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA"),

concerns when an enforcement action accrues under the statute of limitations after an arbitration award and, alternatively, whether a request for interpretation of an arbitration award tolls the limitations period. Following an arbitration award, the union sought to enforce the award in district court. The district judge determined that the union's petition was outside the two-year, statutory limitations period and dismissed the enforcement action, which has presented first-impression issues for our circuit. We affirm.

## I. BACKGROUND

On November 19, 2002, T.R. Pitzen, employed by defendant-appellee, CSX Transportation, Inc. ("CSX"), claimed absence from work because of an off-duty neck injury. CSX did not question the legitimacy of Pitzen's claim. After nearly a three-week absence, Pitzen told a supervisor that, during the period when he supposedly was unable to operate trains, he had driven from Ohio to Panama City, Florida, participated in a karate tournament, and won the heavy-weight title at that tournament. Because his claimed injury absence was under false pretenses, CSX charged Pitzen with dishonesty and terminated him.

On behalf of Pitzen, plaintiff-appellant, Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment CSX Transportation Northern Lines ("BLET"), challenged his dismissal and requested his

2

reinstatement. Pursuant to the parties' collective bargaining agreement and a separate arbitration agreement that established Public Law Board 5959 (the "Board"), the parties referred Pitzen's claim to the Board.[1] An arbitrator determined that CSX had the burden of proving that Pitzen had been dishonest regarding his absence because of his alleged injury and that it had failed to carry its burden. On June 2, 2004, the arbitrator sustained Pitzen's claim and ordered compliance within thirty days.

CSX reinstated Pitzen but did not pay him back wages for the period of his dismissal. On August 19, 2005, BLET sent a letter to CSX and demanded back pay for Pitzen. CSX responded that the award did not require the payment of back

_____

[1] The RLA governs labor relations in the railroad industry and prescribes mandatory procedures for the resolution of disputes. Minor disputes arise under collective bargaining agreements involving employee grievances, which seek to enforce contractual rights or to resolve differing interpretations of an award. Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480 (1989); Empresa Ecuatoriana de Aviacion, S. A. v. District Lodge No. 100, 690 F.2d 838, 843 (11th Cir. 1982). Minor disputes include disputes over a carrier's right to discipline employees under the terms of a collective bargaining agreement. Martin v. American Airlines, Inc., 390 F.3d 601, 607 (8th Cir. 2004). If the parties cannot resolve minor disputes, then either party may submit the dispute to final and binding arbitration. 45 U.S.C. § 153 First (i); see Consolidated Rail Corp., 491 U.S. at 303, 109 S.Ct. at 2481; Empresa Ecuatoriana de Aviacion, 690 F.2d at 844. Such arbitration can occur before the National Railroad Adjustment Board ("NRAB"), a permanent arbitration board established by the RLA, 45 U.S.C. § 153 First. Alternatively, arbitration can occur before an arbitration board that the carrier and union create. 45 U.S.C. § 153 Second. These alternative boards are commonly referred to as Public Law Boards, which consist of representatives designated by the carrier and the union and a neutral arbitrator. 45 U.S.C. § 153 Second; International Bhd. of Elec. Workers v. CSX Transp., Inc., 446 F.3d 714, 717 (7th Cir. 2006). BLET and CSX created Public Law Board No. 5959 to arbitrate specified labor disputes between them.

3

wages. For more than a year, BLET did nothing. In November 2005, BLET sent two more letters to CSX demanding back pay for Pitzen. CSX responded by repeating its position that the award did not include back pay.

On February 9, 2006, BLET requested that the arbitrator clarify whether the award required payment of back wages. BLET had first acknowledged the potential need for such a clarification in its initial letter on August 19, 2004, but delayed making its request for an interpretation for another sixteen months. On April 7, 2006, the arbitrator clarified that, although the award did not provide for back wages expressly, the terms of the parties' collective bargaining agreement required them. Nonetheless, BLET waited almost four more months before filing its petition for enforcement with the district court on August 1, 2006. In lieu of an answer, CSX moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), because the two-year statute of limitations barred BLET's petition to enforce the award.

On the facts pled in BLET's petition, the district judge concluded that the cause of action for enforcement accrued on July 3, 2004, and granted CSX's motion. The judge additionally decided that the Board had issued an interpretation of the award under 45 U.S.C. § 153 First (m), which did not toll the statute of limitations. Accordingly, the district judge determined that BLET filed its August

4

1, 2006, petition outside the two-year limitations period and dismissed the action. BLET has appealed that order.

## II. DISCUSSION

A. Standards of Review

Prevailing parties under Public Law Boards can enforce awards in federal district court. 45 U.S.C. § 153 First (p). In reviewing a motion to dismiss under Rule 12(b)(6), the standard of review "is the same for the appellate court as it was for the trial court." Stephens v. Department of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). We review a district judge's order granting a motion under Rule 12(b)(6) *de novo*. Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2003) ( per curiam). We accept the allegations in the complaint as true and construe them in favor of the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). A Rule 12(b)(6) dismissal "on statute of limitations grounds is appropriate only if it is '"apparent from the face of the complaint"' that the claim is time-barred." Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 (11th Cir. 2005) (citations omitted).

We review *de novo* a district court's legal determination concerning the availability of equitable tolling. Drew v. Department of Corrs., 297 F.3d 1278, 1283 (11th Cir. 2002). In contrast, the application of that law to the particular facts

5

is reviewed for abuse of discretion. Arce v. Garcia, 434 F.3d 1254, 1260 (11th Cir. 2006). There is an abuse of discretion when a district judge bases his or her decision on factual findings that are clearly erroneous. Id.

B. Accrual of Cause of Action

There is no dispute that the two-year statute of limitations contained in 45 U.S.C. § 153 First (r) applies to BLET's action. This appeal concerns when BLET's enforcement cause of action under 45 U.S.C. § 153 First (p) accrued for the purpose of calculating the running of the statute of limitations. Because the award specifically states that CSX had to comply within thirty days, and the date of the award was June 2, 2004, the district judge concluded that BLET's enforcement cause of action accrued on July 3, 2004. Since BLET did not file its petition for enforcement until August 1, 2006, the judge dismissed BLET's claim as untimely.

The statute of limitations for RLA enforcement actions states that "[a]ll actions at law based upon the provisions of this section shall be begun *within two years from the time the cause of action accrues* under the award of the division of the Adjustment Board, *and not after*." 45 U.S.C. § 153 First (r) (emphasis added). To determine when an enforcement cause of action accrues, the statute provides:

> If a carrier does not comply with an order of a division of the Adjustment Board *within the time limit in such order*, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States . . . a petition setting forth briefly

6

the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board *shall be conclusive on the parties* . . . .

45 U.S.C. § 153 First (p) (emphasis added). The plain language of these provisions makes the carrier's failure to comply within the time limit established by the award the triggering event for an enforcement action and the running of the statute of limitations. BLET's interpretation, that "there is a cause of action for enforcement of an award, not when an award issues, or even when it becomes effective, but when the carrier refuses to comply with the award," Appellant's Br. at 10, disregards the subsequent clarifying statutory phrase that a carrier must comply "within the time limit in such order," 45 U.S.C. § 153 First (p).

The primary principle of statutory construction requires courts to give effect to the plain meaning of the words used "in their ordinary and usual sense." Caminetti v. United States, 242 U.S. 470, 485-86, 37 S.Ct. 192, 194 (1917). To the extent possible, the rules of statutory construction require courts to give meaning to every word and clause in a statute. United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 520 (1955); TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 449 (2001). Additionally, courts must reject statutory interpretations that would render portions of a statute surplusage. TRW, 534 U.S. at 31, 122 S.Ct. at

7

449.

Consequently, the plain meaning of "within the time limit in such order" in § 153 First (p) is that a cause of action to enforce an award arises at the end of the time limit set forth in that award. By requiring a carrier to comply by a date certain, the RLA provides plaintiffs with a basis to determine whether they have a cause of action for enforcement. No compliance by the requisite date indicates that a potential plaintiff had time to acquire sufficient factual knowledge for reasonable inquiry to reveal the cause of action. United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 359-60 (1979). In this case, BLET had reasonable basis to know that CSX was not going to pay Pitzen back wages when it did not do so by July 2, 2004, the date specified in the award for compliance. Consequently, BLET's cause of action accrued on the date following the deadline for compliance stated in the award, or July 3, 2004, as the district judge correctly determined.

Other circuits have interpreted § 153 First (p) literally and strictly as did the district judge in this case. See Lekas v. United Airlines, Inc., 282 F.3d 296, 300 (4th Cir. 2002) (recognizing that "the failure to comply would have occurred *when payment was not made within that specified time*" (emphasis added)); Transportation Commc'ns Int'l Union v. CSX Transp., Inc., 30 F.3d 903, 905 (7th Cir. 1994) ("TCIU") ("As a general rule, a cause of action accrues for purposes of

8

subdivision (r) upon a carrier's non-compliance *at the time fixed for compliance in the award*." (emphasis added)); Joint Council Dining Car Employees Local 370, Hotel & Restaurant Employees Int'l Alliance v. Delaware, L. & W.R. Co., 157 F.2d 417, 420-21 (2d Cir. 1946) (concluding that the cause of action accrued the day after the date specified in the award for compliance).[2] These consistent interpretations in other circuits not only are supported by the clear meaning of the statutory text but also are justified by policy considerations underlying statutes of limitations. With statutes of limitations, legislatures determine that "'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" Kubrick, 444 U.S. at 117, 100 S.Ct. at 357 (citation omitted). "Statutes of

---

[2] The Sixth Circuit affirmed a district court's determination that

> It is clear and unambiguous that the Congress intended that carriers and its employees, through their unions or otherwise, should be encouraged to avoid industrial strife by setting up special boards of adjustment to determine disputed claims arising from the interpretation of collective bargaining agreements then in effect between the carrier and the union; that such special boards' jurisdiction was to be limited to the jurisdiction conferred thereupon by agreement of the carrier and union; that compliance with the awards of these special boards should be enforced in United States district courts in the same manner and subject to the same proceedings for enforcement of compliance therewith as had earlier been provided for enforcement of compliance with awards of the National Railroad Adjustment Board; and that *the right of action to enforce such compliance should accrue on the date fixed by the special boards as '. . . the time limit . . .' for such compliance.*

Switchmen's Union of N. Am. v. Clinchfield R.R. Co., 310 F. Supp. 606, 610 (E.D. Tenn. 1969) (quoting 45 U.S.C. § 153 First (p)) (omissions in original) (emphasis added), aff'd, 427 F.2d 161 (6th Cir. 1970).

limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452-53 (7th Cir. 1990) (Posner, J.). Tying the accrual of an enforcement action to the specific time set forth in the award ensures that these interests are served and guarantees that both the potential plaintiff and the carrier know the earliest and latest date that an enforcement action can be instituted. Railroad Yardmasters of N. Am. v. Indiana Harbor Belt R.R. Co., 166 F.2d 326, 329 (7th Cir. 1948).

Significantly, this definite standard serves the policy considerations underlying the RLA. One of the stated objectives of the RLA is "to provide for the prompt and orderly settlement" of railway labor disputes. 45 U.S.C. § 151a(5). In enacting the RLA, "Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements." Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 94, 99 S.Ct. 399, 402 (1979) (per curiam). The specific limitations period established by the district judge's interpretation of § 153 First (p) promotes efficiency and prevents labor disputes concerning this issue. See id.

at 95, 99 S.Ct. at 403 (A determination than an employee "had not filed his appeal within the time requirements of the collective-bargaining agreement . . . is final and binding upon the parties and neither the District Court nor the Court of Appeals had authority to disturb it.").

BLET has not identified any authority that supports an accrual rule different from the district judge's application of § 153 First (p).[3] Accordingly, the district judge did not err in concluding that CSX failed to comply within the time period

---

[3] While BLET cites Lekas, it fails to note that the award in Lekas did not state a date certain for the carrier to comply. 282 F.3d at 299. It was the absence of a date certain that led the Lekas plaintiff to argue that a cause of action to enforce a RLA award accrues when a plaintiff has some other basis to discover the wrongful act that justifies the cause of action. The Fourth Circuit and all of the parties in Lekas recognized that, if the adjustment board had required the carrier to comply "*within a specified time*, the failure to comply would have occurred when payment was not made within that specified time," and the cause of action would have accrued when the date for compliance had passed. Id. at 299-300 (emphasis added). Lekas is inapposite because the award at issue in this case did specify a time for compliance.

BLET also cites the Seventh Circuit's Railroad Yardmasters decision for the proposition that there is no cause of action under § 153 First (p) "when an award is not clear, not sufficiently definite, or there is a dispute as to what is required." Appellant's Br. at 14. In Railroad Yardmasters, however, the adjustment board had not set a date certain in the challenged arbitration award. 166 F.2d at 328. Because § 153 First (p) confers jurisdiction upon the courts to enforce a RLA award "only on the contingency of non-compliance within the time limit provided in the order," the Seventh Circuit concluded "that an action for enforcement cannot be maintained upon an order which fixes no time limit for compliance." Id. at 329. That court explained that § 153 First (p) "requires that a time limit be fixed in the order" and that, where a fixed time appears, the cause of action for enforcement "would accrue upon non-compliance *at the time fixed*." Id. (emphasis added).

The Seventh Circuit in Railroad Yardmasters also affirmed the district judge's dismissal of the enforcement action because the award was not sufficiently definite to permit enforcement. 166 F.3d at 329-31. But this was an alternative basis for affirmance, separate and distinct from the argument that the plaintiff's claims were barred by the statute of limitations. Id. Therefore, it does not support BLET's contention that its cause of action for enforcement did not accrue until after the Board issued its interpretation of the award.

11

specified in the award.  Because the award in this case expressly provided a time for compliance, the relevant authority supports the July 3, 2004, accrual date and substantiates the district judge's dismissal.  Therefore, the district judge correctly determined that BLET's cause of action accrued when CSX refused to provide back pay by the date stated for compliance in the arbitrator's award.  Because BLET waited more than two years after that date to file its petition, the district judge properly dismissed BLET's enforcement action as barred by the two-year statute of limitations.

C. Effect of Request for Interpretation on Statute of Limitations

BLET alternatively argues that, even if its cause of action accrued on July 3, 2007, the district judge still erred in dismissing the case because BLET's request for an interpretation from the Board as to whether CSX had to pay back wages tolled the running of the statute of limitations.  Equitable tolling is a form of extraordinary relief that courts have extended "only sparingly."  Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 457 (1990).  It is "'appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence.'"  Arce, 434 F.3d at 1261(quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam)); see Outler v. United States, 485 F.3d

1273, 1280 (11th Cir. 2007) (per curiam) ("Equitable tolling is only available if the petitioner establishes (1) extraordinary circumstances and (2) due diligence."). "The plaintiff bears the burden of showing that such extraordinary circumstances exist." Arce, 434 F.3d at 1261. The district judge explained that BLET "fails to allege any extraordinary circumstances beyond its control and unavoidable with diligence that prevented it from filing its action within the limitations period. Instead, BLET relies on the argument that the filing of a request for interpretation tolls the statute of limitations." R1-19 at 10.

Requests for interpretations are not uncommon in RLA arbitration proceedings. 45 U.S.C. § 153 First (m). Significantly, BLET could have sought an interpretation when CSX showed that it did not intend to pay Pitzen back wages by not doing so by July 2, 2004, the date of compliance specified in the award. Additionally, CSX clarified that it did not believe that the award required it to make a payment of back wages in the October 6, 2004, letter that it sent to BLET. Nonetheless, BLET waited until February 9, 2006, to request interpretation. Even when the arbitrator issued an interpretation on April 7, 2006, BLET waited until August 1, 2006, to file its petition for enforcement. These delays show BLET's lack of diligence and such lack of diligence is inimical to a request for tolling. Arce, 434 F.3d at 1261, Sandvik, 177 F.3d at 1271; Outler, 485 F.3d at 1280.

13

"[F]or statute of limitations purposes[,] a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should [not] receive identical treatment." Kubrick, 444 U.S. at 122, 100 S.Ct. 359; Lekas, 282 F.3d at 300. The determinative fact is whether the plaintiff had knowledge of the harm incurred. BLET knew when Pitzen did not receive back wages to which he was entitled within the time that the award established for compliance.

BLET could have pursued an interpretation while it sought to enforce the award. Enforcement and interpretation proceedings should proceed separately and simultaneously. Great Northern Ry. Co. v. National R.R. Adjustment Bd., First Div., 422 F.2d 1187, 1194 (7th Cir. 1970); accord TCIU, 30 F.3d at 907 n.2. The Seventh Circuit explained "that the two procedures [enforcement and interpretation] should proceed independently of, and simultaneously with, each other." Great Northern, 422 F.2d at 1194. When these two actions proceed together, the § 153 First (m) proceedings will result in an interpretation of the award which the parties can make available to the court in the enforcement action, which "is precisely what the statute contemplates" by not dismissing the enforcement action despite the § 153 First (m) interpretation request. Id. "The fact that [the carrier] may have been seeking clarification from the Board to support its position does not amount to evidence that [the carrier] either concealed [plaintiff's]

14

cause of action or caused [plaintiff] to miss a filing deadline," and, consequently, does not justify equitable tolling. Lekas, 282 F.3d at 301. Because BLET sought an award interpretation did not prevent it from simultaneously filing an enforcement action to protect its rights. Therefore, BLET's request for interpretation did not justify equitable tolling, because it had not met its burden of showing that extraordinary circumstances existed. Arce, 434 F.3d at 1261.

To determine whether equitable tolling is appropriate, "[t]he basic question . . . is one 'of legislative intent whether the right shall be enforceable . . . after the prescribed time.'" Id. (quoting Burnett v. New York Cent. R. R. Co., 380 U.S. 424, 426, 85 S.Ct. 1050, 1053 (1965)) (second omission in original); see Midstate Horticultural Co. v. Pennsylvania R.R. Co., 320 U.S. 356, 360, 64 S.Ct.128, 130 (1943) ("It does not follow . . . that Congress did not intend the limitation [period] to be absolute."). Therefore, federal courts have refused to toll the statute of limitations period established by § 153 First (r).[4] The RLA "should be literally applied in the absence of a clear showing of a contrary or qualified intention of

_____

[4] See, e.g., TCIU, 30 F.3d at 906 ("Subdivision (m) states unequivocally that a 'copy of the awards shall be furnished to the respective parties to the controversy, *and the awards shall be final and binding upon both parties to the dispute*.' 45 U.S.C. § 153 First (m) (emphasis added). Clearly, Congress meant an award to be final and binding at this point."); Gatlin v. Missouri Pac. R.R. Co., 631 F.2d 551, 555 (8th Cir. 1980) (recognizing that, because of "[t]he strict finality of Railway Labor Act Board decisions and the narrow scope of review given district courts[,] . . . . *[n]o circumstances whatsoever exist for extension of the limitations period* and the decision of Public Law Board 596 must be deemed final. Appellants' action for review of that decision as against [the railroad company] is time barred." (emphasis added)).

15

Congress." Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R. Co., 353

U.S. 30, 35, 77 S.Ct. 635, 637 (1957). Under a strict interpretation of § 153(r), the

Second Circuit concluded:

> This is a part of the [RLA] setting up a specially constituted board to
> deal with the so-called minor disputes of the industry—grievances in
> the interpretation or application of employment agreements. As an
> integral part of this system, Congress gave the employees a special
> and favorable statutory remedy, to be exercised within two years "and
> not after," a period of enforced inaction for the employer, during
> which he cannot obtain even a declaration of his rights under the
> original agreement. We think, therefore, that *a court is not justified in
> finding any exception to, or extension of, this period*.

Joint Council, 157 F.2d at 420 (quoting 45 U.S.C. § First 153(r)) (citation omitted)

(emphasis added).

In the context of Adjustment Board awards, the former Fifth Circuit

concluded "that while Congress did not foresee this extrastatutory mode of review,

it was its intention that *all methods* of reviewing NRAB awards be barred unless

'begun within two years from the time the cause of action accrues under the award

. . ., and not after.'" Gibson v. Missouri Pac. R.R. Co., 441 F.2d 784, 788 (5th

Cir.1971) (quoting 45 U.S.C. § 153(r) (emphasis added). After reviewing the

overall scheme of the RLA, the Seventh Circuit specifically determined that there

was a policy in favor of the finality for arbitration awards and "decline[d] the

Union's invitation to create an exception to finality where a request for

16

interpretation is made during the limitations period" before a plaintiff files an enforcement action.  TCIU, 30 F.3d at 907.  Using this "highly persuasive" reasoning, the district judge properly concluded that "the two-year statute of limitations found in U.S.C. § 153 First (r) is not tolled by a request for interpretation."[5]  R1-19 at 11 (quoting TCIU, 30 F.3d at 907).

Section 153 First (m) "states unequivocally" that RLA arbitration awards are final when issued by the arbitrator.  45 U.S.C. § 153 First (m); TCIU, 30 F.3d at 906.  Requests for interpretation pursuant to § 153 First (m) do not affect that finality.  While subsection (m) provides arbitrators the power to interpret final

---

[5] Although BLET argues that the Sixth Circuit's decision in Jones v. Seaboard System Railroad, 783 F.2d 639 (6th Cir. 1986), where the plaintiff sought review of a RLA award under 45 U.S.C. § 153 First (q), establishes a basis for tolling its claims, Jones is inapposite.  Unlike § 153 First (p), which provides for the enforcement of awards, paragraph (q) allows for limited review of RLA arbitration awards by district courts.  The Sixth Circuit rejected the plaintiff's request and found that the plaintiff's claim accrued when the arbitrator issued an award affirming the employee's dismissal, and the plaintiff failed to seek review within the two-year limitations period established by § 153 First (r).  Id. at 642-43.  In making this determination, the Sixth Circuit explained in *dictum* that the only way the plaintiff could have escaped the statute of limitations was to have "filed a motion to reconsider within the two-year period, thereby tolling the time limitation."  Id. at 643.

As the Seventh Circuit, has explained, the Jones *dictum* was incorrect.  TCIU, 30 F.3d at 906 n.1.  That *dictum* was premised on seeking a motion for reconsideration of an Interstate Commerce Commission order; the Interstate Commerce Act permits parties to petition for reconsideration.  Interstate Commerce Comm'n v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270, 277-78, 107 S.Ct. 2360, 2365 (1987); Jones, 783 F.2d at 643.  In contrast, the RLA does not provide for motions for reconsideration.  TCIU, 30 F.3d at 906.  Requests for interpretation under the RLA § 153 First (m), like the request in this case, are not apposite to motions for reconsideration in non-RLA cases.  Id. at 906 n.1.  Unlike a motion for reconsideration, a request for interpretation does not present the "possibility that the order complained of will be modified or changed in a way that will either render review . . . unnecessary or, on review, present . . . a decision and/or supporting rationale different than that reflected in the original order."  Id. at 906 (citation omitted).

17

awards, it does not give them the power to alter or modify them whatsoever. See id. (citing United Trans. Union v. Soo Line R.R. Co., 457 F.2d 285, 287 (7th Cir. 1972)). Consequently, an interpretation request does not affect the enforceability of an award and does not hinder the pursuit of an enforcement action under § 153 First (p). BLET should have filed its enforcement action prior to or simultaneous with its request for interpretation. Its delay in seeking an enforcement action barred BLET's action under the two-year statute of limitations and is fatal to its case.

### III. CONCLUSION

BLET has challenged the dismissal of its cause of action for enforcement of the arbitration award because of the expiration of the statute of limitations. Alternatively, BLET contends that its interpretation request tolled the running of the statute of limitations. As we have explained, in accord with the view of other circuits that have addressed these issues, an interpretation request does not toll the running of the statute of limitations, which had expired well before BLET filed its enforcement action. The dismissal of BLET's action by the district judge is AFFIRMED.