[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12185
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-23346-JLK

ACHILLE FRANTZ,

Plaintiff- Appellee,

versus

ROSA WALLED,
RAFAEL WALLED,
GREGORY DELATOUR,
SUNTRUST BANK,
1400 NW 20 Street, Miami, FL 33142
R.G.R. MEDICAL MANAGEMENT CORP.,
FIRST COAST SERVICE OPTIONS, INC.,

Defendants -Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 18, 2013)

Before CARNES, BARKETT, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Achille Frantz , pro se, appeals the district court's

dismissal of his amended complaint and the denial of his motion for

reconsideration.  In the amended complaint, Plaintiff Frantz brings claims under

the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§§ 1961 et seq. and Florida common law against Defendants Rosa Walled,

Gregory Delatour, First Coast Service Options, Inc. ("First Coast"), and Suntrust

Bank ("Suntrust").  After review, we affirm.

## I.  BACKGROUND

### A.  The Criminal Case

In this civil appeal, Frantz's claims involve conduct for which he was

prosecuted and convicted along with other defendants.  We thus discuss Frantz's

criminal case first.

In 2006, a federal grand jury in the Southern District of Florida indicted

Plaintiff Frantz, charging him with one count of conspiracy to commit health care

fraud in violation of 18 U.S.C. § 1349 and seven counts of health care fraud and

aiding and abetting in violation of 18 U.S.C. §§ 1347 and 2. [1]   The grand jury

---

[1]In his criminal case, Plaintiff Frantz is referred to as "Frantz Achille."  The record does
not contain any explanation for this discrepancy.  To avoid confusion, we refer to him by the
name used throughout this civil case.

2

alleged that Frantz, a licensed physician, joined a conspiracy with Walled and Delatour, to fraudulently obtain federal Medicare funds. In furtherance of the conspiracy, Walled and Delatour (not physicians) established two medical clinics in Miami, Florida.[2] Walled and Delatour hired Frantz to provide treatment at the clinics. The indictment alleged that Frantz worked at one clinic from January 2005 to April 2005 and at the other clinic from April 2005 to July 2005.

According to the indictment, the conspirators recruited to the clinic Medicare recipients who were not infected with HIV. There, the Medicare recipients provided blood samples, which the conspirators biologically altered so that the samples looked like they came from individuals infected with HIV. Frantz then prescribed unnecessary medications to these Medicare recipients. Thereafter, the medical clinics sought and obtained Medicare reimbursements exceeding two million dollars for these unnecessary treatments.[3]

In 2006, Frantz was arrested. In 2007, a jury found Frantz guilty of conspiring to commit health care fraud, and guilty as to five of the seven health care fraud counts. The district court sentenced Frantz to a total of 78 months'

---

[2]Walled and Delatour marketed the clinics as treatment centers for individuals diagnosed with Human Immunodeficiency Virus ("HIV").

[3]The indictment does not make clear whether the patients ever actually received the prescribed treatments.

3

imprisonment.  This Court affirmed Frantz's convictions and sentence.  See United States v. Achille, 277 F. App'x 875 (11th Cir. 2008) (per curiam).

## B.  The Original Civil Complaint

Subsequently in 2010, Frantz, pro se, filed his original civil complaint in this case against:  (1) Walled and Delatour, his criminal co-conspirators described above; (2) First Coast, which processed the Medicare payments; and (3) Suntrust, where the clinic, Walled, and Delatour had bank accounts. [4]

Each defendant filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim.  Before the district court ruled, Frantz moved for leave to file an amended complaint which he attached.  The district court agreed with Defendants about the inadequacy of the original complaint and, on July 27, 2011, dismissed it without prejudice.  At the same time, however, the district court deemed Frantz's amended complaint filed and ordered Defendants to respond to the amended complaint within 20 days of the order.

---

[4]Additionally, Frantz brought claims against a fifth defendant, Rafael Walled.  However, Frantz did not timely serve this defendant.  Frantz does not appeal the district court's refusal to consider the claims against Rafael Walled.

## C.  The Amended Civil Complaint

Plaintiff Frantz's amended complaint attempted to assert, <u>inter alia</u>, federal civil RICO claims and various state common law claims.  Each defendant filed a motion to dismiss the amended complaint on multiple grounds.  On February 21, 2012, a magistrate judge's report recommended granting the motions to dismiss.  The magistrate judge concluded that Frantz's amended complaint, construed liberally, invoked federal subject matter jurisdiction.  Nevertheless, the magistrate judge advised that the district court should dismiss the amended complaint because it:  (1) failed to comply with pleading requirements in Rule 8(a); and (2) contained claims that were facially time-barred by the applicable statutes of limitations.  Because Frantz had already received one opportunity to correct his complaint's deficiencies, the magistrate judge recommended that the district court dismiss the amended complaint with prejudice.

Frantz objected to the magistrate judge's report.  The district court overruled the objections, adopted the report, and dismissed the amended complaint with prejudice.  Frantz then filed a motion for reconsideration which the district court denied.  Frantz timely appealed.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

As the magistrate judge's report noted, Frantz asserted claims under RICO and invoked federal question jurisdiction under 28 U.S.C. § 1331.[5]  Defendant First Coast, however, argues that:  (1) it acted as the government's agent when it took the alleged actions referenced in Frantz's amended complaint; (2) that as a government agent, First Coast is entitled to sovereign immunity; and (3) thus the district court lacked subject matter jurisdiction over Frantz's claims against First Coast.[6]

When the alleged events occurred, First Coast was operating under a contract with the Center for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services.  CMS administers the Medicare program, "a federally subsidized, voluntary enrollment health insurance program."  Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Human Servs., 468 F.3d 1347, 1348–49 (11th Cir. 2006).

---

[5]We are "obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking."  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005) (internal quotations marks omitted).  Not only must we, as an appellate court, satisfy ourselves of our own jurisdiction, "but also of that of the lower court[] in a cause under review."  Id. (internal quotation marks omitted).

[6]We note that a question of sovereign immunity is a jurisdictional issue; unless there is an applicable statutory waiver, a district court lacks subject matter jurisdiction to hear a suit against the United States.  United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351 (1980).

In doing so, CMS enters into agreements with "medicare administrative contractors" ("MACs") like First Coast. See 42 U.S.C. § 1395u(a). First Coast, as a MAC, performs a variety of functions, including: (1) receiving Medicare funds and disbursing them to health care providers for services rendered to eligible individuals; (2) determining the amounts owed to such health care providers; and (3) auditing claims for Medicare reimbursement. See 42 C.F.R. §§ 421.200, 421.214.

MACs, like First Coast, are typically entitled to sovereign immunity. See Peterson v. Blue Cross/Blue Shield of Tex., 508 F.2d 55, 57–58 (5th Cir. 1975).[7] This is because, when fulfilling obligations to CMS, a MAC functions as the government's agent. See id. The government is obligated to indemnify the MAC for any adverse judgment rendered against it. See id.; see also 42 C.F.R. § 421.5(b) ("[MACs] act on behalf of CMS . . . . Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of CMS and CMS is the real party of interest in any litigation involving the administration of the program."). However, when the government is not obligated to indemnify a MAC, such as when the MAC is liable for criminal or fraudulent conduct, the MAC is not entitled to sovereign immunity. See Anderson v. Occidental Life Ins. of Calif., 727 F.2d 855, 856–57 (9th Cir. 1984) .

---

[7]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Here, Frantz alleges that First Coast engaged in criminal and fraudulent conduct, and that such conduct gives rise to liability under RICO. Thus, the government would not be required to indemnify First Coast for any recovery against it, eliminating the basis for sovereign immunity. The district court, therefore, properly exercised subject matter jurisdiction over Frantz's claims against First Coast.

## B.  Motions to Dismiss

"We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012) (per curiam) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, we are mindful that Rule 8(a) "require[s] only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" United States v. Baxter Int'l, Inc., 345 F.3d 866, 880 (11th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)). This is because Rule 8(a)'s purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted). Therefore, "a complaint's factual allegations must be enough to raise a right to

relief above the speculative level." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (internal quotation marks and alterations omitted).

Construing the amended complaint liberally in light of Frantz's pro se status, we nevertheless conclude that the district court properly dismissed the amended complaint as a "shotgun" pleading. A shotgun pleading "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006). This Court has repeatedly condemned shotgun pleadings. See Davis, 516 F.3d at 979. This is because, from a shotgun pleading, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996).

Frantz's amended complaint contains 25 counts, each without any legal or factual support. These 25 counts are followed by 109 paragraphs of factual allegations and sporadic, unexplained legal citations. There is no logical connection between the conclusory statements of legal violations and the factual allegations. The amended complaint's failure to link factual allegations to specific counts makes it a quintessential shotgun pleading. As such, it does not comply with Rule 8(a), and the district court properly dismissed it.

9

Alternatively, even assuming arguendo that Frantz's amended complaint satisfied Rule 8(a), we still affirm the dismissal because Frantz's claims, to the extent that we can decipher them, are time-barred by the applicable statutes of limitations.[8]

Civil RICO claims are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 107 S. Ct. 2759, 2767 (1987). A civil RICO claim accrues and the four-year limitations period begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." Maiz v. Virani, 253 F.3d 641, 676 (11th Cir. 2001) (citing Rotella v. Wood, 528 U.S. 549, 555, 120 S. Ct. 1075, 1080 (2000)).

Frantz alleges that he was injured by actions that he identifies as occurring primarily between March 2005 and August 2005; however, construed liberally, Frantz's amended complaint also mentions in places conduct in 2006. On August 11, 2006, Frantz was arrested for participating in the Medicare fraud scheme. On that date, Frantz knew, or should have known, of Defendants' wrongdoing and his resulting injury. Therefore, his civil RICO claims accrued at that time.

---

[8]We review de novo a district court's decision to dismiss a complaint based on a statute of limitations. Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1193–94 (11th Cir. 2008). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." Id. (internal quotation marks omitted).

Because Frantz's civil RICO claims accrued, at the latest, on August 11, 2006, he needed to bring such claims by August 11, 2010 for them to be considered timely.  Frantz did not file his original complaint until September 15, 2010.  Frantz's civil RICO claims were, therefore, untimely.  Frantz's state law claims were also subject to a four-year statute of limitations.  Fla. Stat. § 95.11(3)(j).  Therefore, they too were untimely filed.

We recognize that Frantz alleges, and we accept as true, that he suffered additional injuries after his August 11, 2006 arrest for Medicare fraud, including: being convicted of federal offenses, being incarcerated, and losing his medical license.  If a single RICO violation gives rise to multiple "new and independent injur[ies]", a new civil RICO claim may accrue with each injury, regardless of when the original acts occurred.  See Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Fla., Inc., 906 F.2d 1546, 1552 (11th Cir. 1990), abrogated on other grounds by Rotella, 528 U.S. at 555, 120 S. Ct. at 1080.  However, when a subsequent injury is not "new and independent" of the original injury, the plaintiff must bring his claim alleging the subsequent injury within four years of when he knew or should have known of his original injury.  Pilkington v. United Airlines, 112 F.3d 1532, 1537–38 (11th Cir. 1997).

Frantz's additional injuries—health care fraud conviction, incarceration, and medical license loss—were not "new and independent" of his being arrested for

11

committing health care fraud, but were directly related to that fraud.  See

Pilkington, 112 F.3d at 1537–38.  Consequently, no new civil RICO claims

accrued based on these subsequent injuries.

To the extent that Frantz argues that he was eligible for equitable tolling, this

argument fails.  "Equitable tolling is defeated . . . when it is shown that

indisputably the plaintiff[] had notice sufficient to prompt [him] to investigate and

that, had [he] done so diligently, [he] would have discovered the basis for [his]

claims."  Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1252

(11th Cir. 2001) (internal quotation marks omitted).

## C.  Motion for Reconsideration

We review for abuse of discretion a district court's denial of a motion for

reconsideration.  Corwin v. Walt Disney Co., 475 F.3d 1239, 1254 (11th Cir.

2007).  A motion for reconsideration under Rule 59(e) should be granted only on

the basis of newly discovered evidence or a manifest error of law or fact.  Arthur v.

King, 500 F.3d 1335, 1343 (11th Cir. 2007).  Rule 59(e) is not an appropriate

vehicle to "relitigate old matters, raise argument or present evidence that could

have been raised prior to the entry of judgment."  Michael Linet, Inc. v. Village of

Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).

12

Frantz based his motion for reconsideration on purported newly discovered evidence pertaining to a criminal conviction of a former First Coast employee.[9] "[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997).  A Rule 59(e) motion based on newly discovered evidence should not be granted unless the movant demonstrates the materiality of the new evidence.  See, e.g., Briscoe v. Cnty. of St. Louis, Mo., 690 F.3d 1004, 1015 (8th Cir. 2012); DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001); see also Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003) (setting forth the materiality requirement for a Rule 60(b) motion).

Frantz's proffered evidence did not meet these criteria.  Frantz admits he actually received the evidence on February 27, 2012, before the district court dismissed his amended complaint on March 15, 2012.  In any event, the proffered evidence is immaterial.  There is nothing in Frantz's motion for reconsideration showing that this former First Coast employee was at all involved with the

---

[9]Frantz also argued that the district court's failure to consider the purported newly discovered evidence would result in a manifest injustice.  However, we do not construe this argument as asserting a separate grounds for granting the motion for reconsideration.

13

conspiracy at issue here, much less how that employee's conduct is connected to the claims in his shotgun complaint.

### III.  CONCLUSION

In light of the foregoing, we affirm the district court's orders dismissing Frantz's amended complaint with prejudice and denying his motion for reconsideration.

**AFFIRMED.**

14